## CRAMPTON *v.* CRAMPTON.

1. JUDGMENT — JUDGMENT NON OBSTANTE VEREDICTO — STATUTE — COURT RULE.

A motion for judgment *non obstante veredicto* in a case tried before the court without a jury was ineffective, since Act No. 217, Pub. Acts 1915 (3 Comp. Laws 1915, § 14568 *et seq.*), and Circuit Court Rule No. 44, made in pursuance thereof, are applicable only in actions tried before a jury.

2. GARNISHMENT—INTERPLEADER—STIPULATION—FRAUD—BURDEN OF PROOF—PLEADING.

In garnishment proceedings, where it was stipulated by counsel that interpleaded defendant, who as assignee claimed the fund garnished, was to have the affirmative on the issue as to whether he was the owner of the fund, the court below was not in error in permitting him to be interrogated upon the subject of fraud or bad faith in his transactions with the principal defendant, Circuit Court Rule No. 23 providing that notice shall be given where fraud is an affirmative defense, being inapplicable.

3. TRIAL—EVIDENCE—SUFFICIENCY—WITNESSES—CREDIBILITY.

The credibility of testimony and its sufficiency to support a finding are to be determined by the trial judge when he hears a case without a jury.

4. SAME.

*Held*, that the state of the record was such that the finding of the court supporting judgment for plaintiff was justified, if he did not believe the testimony of interpleaded defendant, who was sole witness on his own behalf.

5. STIPULATIONS—EVIDENCE—PROOF— WAIVER — IMMATERIALITY OF FINDING.

Where it was stipulated by counsel that, although plaintiff in garnishment proceedings had not yet obtained a judgment against the principal defendant, the interpleaded defendant waived any proof upon that question, the finding of the court that plaintiff had a decree upon which said suit was based was immaterial and of no importance.

Error to Kent; Brown, J. Submitted January 16, 1919. (Docket No. 53.) Decided April 3, 1919.

Garnishment proceedings by Mae Crampton against the Grand Rapids Brass Company, as garnishee defendant of Basil R. Crampton. Isadore Wolf was interpleaded as defendant claiming as prior assignee of the fund. Judgment for plaintiff. Defendant Wolf brings error. Affirmed.

*Herman & Johnson* (*Arthur Jones*, of counsel), for appellant.

*Earl F. Phelps* (*William M. Johnson*, of counsel), for appellee.

STONE, J. The plaintiff brought action in assumpsit in the circuit court for the county of Kent against the principal defendant, seeking to recover a sum amounting to $1,020, with interest and costs, upon a claim for alimony which was alleged to have been awarded to her in an action for divorce in the circuit court for the county of Cook, State of Illinois, and upon which decree a judgment had been obtained in said circuit court for the county of Cook, on November 27, 1917, in favor of the plaintiff and against the principal defendant in said sum. The plaintiff, at the same time, brought garnishment proceedings against the Grand Rapids Brass Company.

In a disclosure filed January 9, 1918, and also by a later disclosure filed June 20, 1918, the brass company disclosed an indebtedness to the principal defendant for royalties on a certain contract dated January 25, 1916; but also disclosed that subsequent to the service of such writ of garnishment one Isadore Wolf, of Detroit, had claimed, by an assignment from the principal defendant, to be the owner of such contract for royalties; whereupon an order was entered requiring the said Isadore Wolf to interplead as a defendant in the said garnishee proceedings. The said Wolf duly appeared, and the court ordered an issue

to be formed in pursuance of the provisions of section 28 of chapter 28 of the judicature act (3 Comp. Laws 1915, § 13149) and an issue was formed accordingly. On June 25, 1918, the issue joined between the plaintiff and Wolf came on to be tried before the court without a jury.

The issue had been formed as follows:

(a) Has the plaintiff in the case a judgment against the principal defendant herein; upon which the plaintiff is to have the affirmative?

(b) Did Isadore Wolf, the interpleaded defendant, at the time of the service of the writ of garnishment in the case, own the fund disclosed by the disclosure of the garnishee defendant herein; upon which the interpleaded defendant is to have the affirmative?

Thereupon, in open court, it was stated by counsel and agreed to, that two certain writs of garnishment had been issued therein, both against the same garnishee defendant, and that disclosure had been made as to both writs, and upon request of counsel for both parties, it was ordered that the trial should proceed as to said issues, and upon both of said writs of garnishment and both of the disclosures therein.

It was thereupon agreed between counsel, in open court, that, although the plaintiff had not at that time obtained a judgment in said court against the principal defendant, yet the interpleaded defendant voluntarily waived any proof upon that question, and asked that the case proceed as to the second issue joined, for the determination of the question as to the rights of the interpleaded defendant, and this being agreed to in open court by counsel for the plaintiff, the case proceeded to trial upon that issue alone.

The said Wolf was the only witness sworn in his own behalf.

The trial court after the trial, having announced an oral opinion, gave the interpleaded defendant leave to

file a written request that the court make and file special findings of fact and law. Pursuant to such request, the trial court made and filed such findings, which, omitting the formal part thereof, was as follows:

"After mature deliberation thereon the court doth find that Mae Crampton, plaintiff, and Basil R. Crampton, principal defendant, were formerly husband and wife; that a separation between them took place prior to the year 1912, and that in October, 1912, the said Mae Crampton obtained, in the circuit court for the county of Cook and State of Illinois, a decree of divorce from the said Basil R. Crampton, in which decree the said Basil R. Crampton was ordered to pay the said Mae Crampton the sum of four dollars per week; that afterwards the said Basil R. Crampton removed from the State of Illinois and came to the State of Michigan and city of Detroit without having complied with the said decree, and the said Basil R. Crampton has never complied with the said decree, or paid anything thereon, and that there accumulated on said decree ten hundred twenty dollars, for which amount the said Mae Crampton obtained a judgment in the said circuit court for the county of Cook and State of Illinois against the said Basil R. Crampton, November 27, 1917, and that suit was brought in this court on said foreign judgment in December, 1917, garnisheeing the Grand Rapids Brass Company of Grand Rapids, Michigan; that said Grand Rapids Brass Company filed its disclosure setting forth that it owed the said Basil R. Crampton, principal defendant, eight hundred twenty-seven and 12/100 dollars, but that it had received a letter from one Isadore Wolf enclosing a copy of an alleged contract between the said Wolf and the said Crampton subsequent to the time it was served with process, which contract pretended to assign moneys due Crampton to Wolf; and that the said Grand Rapids Brass Company was later garnisheed in the same suit and filed a disclosure that it owed twelve hundred sixty-six and 94/100 dollars to the said Crampton and again referring to the letter and copy of alleged contract received from Wolf.

"That the said Wolf is a young man working in Detroit for McCray & Co. of Indiana, receiving a salary of twenty-five dollars per week and some commissions, the amount of which does not appear, and that the said Wolf and Crampton were young men and had been acquainted with each other and in close personal relations since 1913.

"The court doth further find from the evidence that the said Crampton and the said Wolf conspired together to the end that the said Crampton should assign his interest in a contract for royalties with the Grand Rapids Brass Company to the end that the said Crampton should be immune from any claims his former wife, May Crampton, should have against him, and to attain that end they had drawn up and executed a contract appearing to be dated March 4, 1916, but whether the said Wolf knew of the precise status of said claim of Mae Crampton, or the exact legal proceedings that she had taken in Chicago on said claim the court cannot say; and that in furtherance of said conspiracy they had inserted in said contract a clause to the effect that neither party thereto should let the brass company know of any such assignment unless the exigencies of the occasion should require it, in which event the said Wolf could notify the said brass company that he had an assignment, and thereupon become subrogated to the rights of the said Crampton for royalties, provided for in said contract.

"The court doth further find that the said Wolf did not actually and in good faith own the fund at the time of the service of the writs of garnishment in this cause and that the effort between Crampton and Wolf to transfer the said fund was only a makeshift and for the purpose of defrauding plaintiff, Mae Crampton, out of the moneys that were due her from the said Basil R. Crampton, and therefore the said instrument alleged to have been entered into March 4, 1916, was void so far as the said Mae Crampton was concerned, and that the interpleaded defendant Wolf has therefore failed to prove by a preponderance of the evidence his claim that he was the owner of the fund at the time of the garnishments in this cause.

"The court doth further find that it is the law that an interpleaded defendant has the burden of proving

his claim, and also that the parties to this cause had stipulated that in this cause the interpleaded defendant Wolf should have the burden of proof on the question as to whether he was the owner of the fund, and that the said plaintiff was never required to plead to said issue, and that the plaintiff was therefore entitled to cross-examine the interpleaded defendant on the question of fraud, or any question that would bring out any infirmity in his claim to the fund on which he had the burden of proof; and further, that the plaintiff might question the validity of the alleged assignment of March 4, 1916, or attack it for lack of consideration, or on the ground of fraud, or for any other reason because it was incumbent upon the interpleaded defendant to prove by preponderance of the evidence that he had a valid claim to the fund, and if it appeared by his own proof that his claim was invalid, or if he failed to show that his claim was valid, he had not complied with the burden resting upon him.

"The court doth further find that said pretended contract was a fraud and the result of a conspiracy between the said Crampton and the said Wolf and that the said Wolf was not the owner of the fund at the time that the garnishment processes were served on the Grand Rapids Brass Company, and that the interpleaded defendant has failed to establish his claim by a preponderance of the evidence, and that his claim to said fund should be denied, and that the plaintiff should have judgment against the said Grand Rapids Brass Company for whatever amount she secures judgment against the principal defendant, Basil R. Crampton, which amount is ten hundred twenty dollars with costs of this suit to be taxed."

The interpleaded defendant thereupon filed exceptions to the foregoing findings. There was also entered a motion for a new trial, for the following reasons:

1. Because the court erred under the pleadings in permitting cross-examination of the interpleaded defendant tending to establish fraud.

2. Because there was no evidence in the case that at the time the agreement of March 4, 1916, was made,

the interpleaded defendant had any knowledge or no-
tice that the plaintiff had a. cause of action against
the principal defendant.

3. Because the decision of this court is against the
clear weight of the evidence.

The motion was denied, and the interpleaded de-
fendant duly excepted.

There was also a motion for judgment *non obstante
veredicto.* As Act No. 217, Pub. Acts 1915 (3 Comp.
Laws 1915, § 14568 *et seq.*), and Circuit Court Rule
No. 44, made in pursuance thereof, are only applica-
ble in actions tried before a jury, this last motion was
ineffective, and no further notice will be taken of it.

Judgment having been entered upon the findings of
the court, the interpleaded defendant has brought er-
ror, and the assignments of error raise the same ques-
tions as were presented in the motion for a new trial;
and, also, that the court erred in refusing to grant the
interpleaded defendant a new trial for the reasons
therein stated.

The first question argued by appellant is that the
court erred in permitting the interpleaded defendant
to be interrogated upon the subject of fraud or bad
faith in his transactions with the principal defendant,
claiming that it was an affirmative defense and that
notice should have been given thereof, under Circuit
Court Rule No. 23. We cannot agree with appellant's
counsel in this claim. Not only by stipulation, but
under correct practice, the interpleaded defendant had
the affirmative of the issue, and the rule referred to
is wholly inapplicable in such a proceeding.

The next question discussed by counsel for appellant,
and one on which he says the assignments of error all
turn, is as to whether the plaintiff succeeded in break-
ing down the validity of the contract of March 4,
1916, between the interpleaded defendant and the
principal defendant. And it is also claimed that the

finding of the court was against the clear weight of the evidence.

The case is somewhat peculiar in that it presents a situation where the trial court manifestly did not believe the testimony of the interpleaded defendant, who held the affirmative of the issue. He saw fit to submit the case upon his sole testimony, only corroborated, as he claimed, by certain written documents. These documents disclosed that when the agreement of March 4th was entered into, and signed by the principal defendant and the interpleaded defendant, there were present not only the principal defendant, but one of the counsel of the interpleaded defendant, and the wife of the interpleaded defendant who witnessed the contract, yet Wolf did not even call Basil R. Crampton as a witness, although he (Wolf) had testified that he had seen Crampton since he had been in Grand Rapids in attendance upon the trial, and his own counsel was present and taking a part in the trial, to say nothing about the wife of Wolf, and he saw fit to submit his case without the aid of testimony of any of those persons.

We have read this evidence with great care, and are unable to say that there was no evidence to support the findings of the circuit judge, and the inferences which he drew, and the conclusions which he reached upon that testimony. The evidence disclosed many peculiarities. The trial court had the advantage of seeing and hearing Wolf testify, and the case presents the question: "What shall be done in a case tried by the court where the findings show that the court did not believe the testimony of the witness?" We shall not undertake to quote from the testimony. It is sufficient to say that the state of the record is such that we think the court was justified if it did not believe the testimony, in reaching the conclusion which it did. We have held that the credibility of

testimony and its sufficiency to support a finding, are to be determined by the trial judge, when he hears a case without a jury. *Edwards* v. *Nelson,* 51 Mich. 121.

The finding has been likened to a special verdict. We have held that a jury may disbelieve the most positive evidence even when it stands uncontradicted; and the court cannot take from them their right of judgment. If they return what the court thinks is a perverse verdict, the court may set it aside, and order a new trial. *Woodin* v. *Durfee,* 46 Mich. 424.

Referring to the case last cited, ·Chief Justice BROOKE, speaking for the court in *Yonkus* v. *McKay,* 186 Mich. 203 (Ann. Cas. 1917E, 458), said:

"The administration of justice does not require the establishment of a rule which compels the jury to accept as absolute verity every uncontradicted statement a witness may make."

In *Brand* v. *Johnrowe,* 60 Mich. 210, referring to *Woodin* v. *Durfee, supra,* this court held that the testimony of a certain witness was for the judgment of the jury, as they had the right to disbelieve the positive evidence given by him, and find from circumstances outside of his testimony a different state of facts. See, also, *Montague* v. *Dougan,* 68 Mich. 98. As to the credibility to be given the witness, the advantages of the circuit judge for arriving at a correct conclusion were superior to ours.

In *Bateman* v. *Blaisdell,* 83 Mich. 357, Chief Justice CHAMPLIN, speaking for this court, said:

"It is the province of the circuit judge, sitting as a trial court, to find all the facts which the testimony in the case tends to prove; and all inferences of facts which are, or may be drawn from the testimony, must be drawn by the trial court. This court can draw no inferences from the testimony contrary to the facts

found by the court below"—citing *Neumann* v. *Mining Co.*, 57 Mich. 97, and other cases.

The correct rule is well expressed in 38 Cyc. p. 1944:

"On a trial by the court without a jury, it is the province of the judge to determine the credibility of the witnesses, and the weight to be attached to their testimony, and the appellate court will not disturb or set aside the finding, unless it is apparent that the court misunderstood or disregarded material evidence introduced on the trial. The court is at liberty to discredit any witness or multitude of witnesses, and disregard any testimony which it deems unworthy of belief, although it is uncontradicted."

See numerous cases cited in note.

In a case before the court without a jury, the court may do with the facts whatever a jury may do.

We quote further from 17 Cyc. pp. 809, 810:

"The following circumstances have been noticed as tending to impair the credibility of testimony to oral declarations or admissions: that the testimony is improbable in view of other facts in the case; that the alleged statement is inconsistent with proved facts in the case, absurd or demonstrably false; that the statement is not in harmony with the conduct of the witness or of the declarant; * * * that the witness is uncorroborated by any independent circumstance in the case; that there is no written corroboration under the party's own hand in a case where written evidence of the fact would be expected; * * * that better and available evidence to prove the fact admitted in the alleged statement is not produced; * * * and that other persons present when the alleged statement was made are not produced, nor their absence accounted for."

The trial court saw this witness, listened to his testimony, saw his manner of testifying and how he could have corroborated his story if it had been true, and failed to believe him. Under the circumstances, we see no reason why we should disturb the finding.

It is urged by appellant that there was no evidence to support the finding of the decree in the Chicago court. In view of the stipulation of counsel, above set forth, such finding was immaterial and of no importance, and cannot be held to be reversible error.

It is finally claimed by counsel for the interpleaded defendant that the finding should be set aside because against the clear weight of the evidence. We think the question is fairly raised by appellant, so far as the practice is concerned, under section 15, chapter 18 of the judicature act (3 Comp. Laws 1915, § 12587); but the court having found that the party upon whom the burden of proof rested had failed to sustain the burden of proof required, we do not think that it is a case where it can be said that the finding is against the clear weight of the evidence.

Under the case as presented, we are constrained to affirm the judgment of the court below.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred. OSTRANDER, J., did not sit.