# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GRADY SHIELDS,

Defendant-Appellant.

UNPUBLISHED
September 22, 2015

No. 322293
Kalamazoo Circuit Court
LC No. 2013-000536-FC

Before: BOONSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Defendant Grady Shields was convicted by a jury of first-degree premeditated murder, MCL 750.316(1)(a), and first-degree felony murder, MCL 750.316(1)(b). He was sentenced to life imprisonment without the possibility of parole. Defendant appeals as of right. We affirm.

This case arises out of the abduction of a Kalamazoo business owner upon her arrival at her company's building on the morning of October 20, 1993, after which she was shot to death and left slumped on the front-passenger-side floor of her vehicle, which was found six days later parked in an alley about 25 miles away in the city of Three Rivers.

Defendant first challenges the sufficiency of the evidence with respect to his identity as the perpetrator. We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court generally cannot interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all

-1-

conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

In this case, there was sufficient evidence supporting the jury's finding that defendant committed the murder. The evidence established that in October 1993 when the victim was killed, defendant was residing in two different locations, with his mother in Kalamazoo and his former girlfriend in Three Rivers. Defendant's mother's residence was located a few blocks from the victim's business, and his girlfriend's residence was located half a block, or a two-minute walk, away from the alley where the victim's car and body were ultimately found. Defendant's girlfriend testified that the alley was visible from her front porch. Further, it was determined that the victim was killed with a .25-caliber firearm. Approximately one month before the victim was killed, a package of .25-caliber ammunition was found in a car defendant had rented. The headstamp on the ammunition found in the car was the same as the headstamp on the spent shell casings found at the crime scene.

Moreover, the jury heard testimony regarding several incriminating statements made by defendant following the victim's death. When defendant's girlfriend asked him if he killed the victim, he told her that she was going to "end up like the lady" if she kept asking questions. Defendant also made statements to other witnesses that he "took care of some bitch" and that he "did it like O.J." There was also testimony by a witness who had been housed in a cell next to defendant at one time. This witness testified that defendant spoke of running into a woman while she was at her car, driving the woman to St. Joseph County, wherein Three Rivers lies, planning to rob the woman, believing that the woman recognized him from the Kalamazoo neighborhood, and then going "pop, pop, pop, pop, pop, pop." Finally, defendant wrote two letters to the St. Joseph Prosecuting Attorney in 2002 and 2005 that contained details supporting a conclusion that defendant was connected to the murder. Although some of the details may have been available to the public, the jury heard testimony that other information contained in the letters had not been publicly disclosed. The letters also contained many chess references; for example, defendant indicated that the prosecuting attorney had "lost the queen," and that "[t]here is too much protection, i.e., lack of evidence, to capture the king."

In sum, when viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented to establish defendant's identity as the perpetrator of the murder beyond a reasonable doubt. Defendant's arguments to the contrary are ultimately predicated on the weight of the evidence, conflicts in the evidence, and/or the credibility of witnesses, none of which warrant reversal. *Wolfe*, 440 Mich at 514-515; *Kanaan*, 278 Mich App at 619.

Next, defendant argues that the jury's verdict was against the great weight of the evidence. Defendant preserved this argument by moving for a new trial on the basis that the verdict was against the great weight of the evidence. *People v Winters*, 225 Mich App 718, 729; 571 NW2d 764 (1997). We review for an abuse of discretion the trial court's denial of defendant's motion. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001).

A claim that the verdict was against the great weight of the evidence requires a review of the whole body of proofs. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds by *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998).

And this Court must determine whether " 'the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result' " if a new trial is not granted. *Lemmon*, 456 Mich at 642 (citation omitted). A verdict may be vacated when it "is more likely attributable to factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations." *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998). In general, conflicting testimony, even when impeached to some extent, and questions regarding the credibility of witnesses are not sufficient grounds for granting a new trial, because it is the role of the jury to determine credibility. *Lemmon*, 456 Mich at 642-643, 647. The exception to this rule only arises when testimony was impeached to the extent that it was deprived of all probative value such that a jury could not have believed it, when testimony contradicted indisputable facts or laws, when testimony was patently incredible, when testimony was inherently implausible, or when testimony was seriously impeached, with the case marked by uncertainties and discrepancies. *Id.* at 643-646.

Here, defendant challenges the testimony of several witnesses on credibility grounds, but we cannot conclude that the witnesses' testimony was deprived of all probative value in a manner warranting a new trial. Defendant impeached multiple witnesses on cross-examination; however, no witness was "seriously impeached" such that the jury was no longer in the proper position to resolve questions of fact and make credibility determinations. Defendant fails to point to any testimony that contradicted indisputable facts, was patently incredible, or was inherently implausible. The evidence submitted to the jury did not preponderate heavily against the verdict such that a miscarriage of justice would result if defendant was not granted a new trial. Therefore, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

Next, defendant argues that the trial court abused its discretion by admitting other-acts evidence concerning defendant's commission of an armed robbery on November 8, 1993, in violation of MRE 404(b).[1] The trial court admitted the evidence for the purpose of proving defendant's common scheme or plan. The decision to admit evidence under MRE 404(b) is reviewed for an abuse of discretion. *People v Jackson*, __ Mich __, __; __ NW2d __ (2015); slip op at 8-9. "A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of evidence." *Id.* at __; slip op at 9. And questions of law are reviewed de novo. *Id.*

---

[1] MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *Jackson*, *id.* at __; slip op at 10-11, our Supreme Court recently reiterated the well-established framework for analyzing the admissibility of other-acts evidence under MRE 404(b):

> "To admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is *not* simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character. The prosecution thus bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity. Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant solely to the defendant's character or criminal propensity. Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. Finally, upon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes." [Citations, ellipses, and internal quotation marks omitted.]

"At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002). In *People v Sabin*, 463 Mich 43, 63; 614 NW2d 888 (2000), the Supreme Court explained "that evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." However, general similarity between the charged and uncharged acts does not by itself establish a plan, scheme, or system. *Id.* at 64. There must be " 'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' " *Id.* at 64-65 (citation and emphasis omitted). Still, unlike evidence of prior misconduct used to prove identity, the common scheme, plan, or system at issue " 'need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense.' " *Id.* at 65-66 (citation omitted).

The November 1993 armed robbery and the charged offense of murder each involved defendant's use of a small caliber weapon to steal or attempt to steal from an isolated female victim while she was in or at her vehicle. In both instances, defendant entered and drove or rode in the victims' vehicles with the victims present inside. Additionally, the evidence indicated that defendant was concerned with whether the victims could identify him. The victim of the armed robbery testified that defendant told her not to look at him. In the instant case, the evidence supported a conclusion that the reason defendant shot the victim was because she looked at him and may have recognized him. Therefore, the other-acts evidence was sufficiently similar to support an inference of a common scheme or plan. Even assuming that reasonable persons might disagree with respect to whether the charged and uncharged acts contained sufficient

-4-

common features to infer the existence of a common scheme or plan, "the trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of discretion." *Sabin*, 463 Mich at 67.

Further, the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403. Although all relevant evidence is prejudicial to some extent, *People v Murphy (On Remand)*, 282 Mich App 571, 582-583; 766 NW2d 303 (2009), evidence may be considered unfairly prejudicial only if the evidence injects "considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (citation and quotation marks omitted). Unfair prejudice exists when there is a probability that the other-acts evidence, which is minimally damaging in logic, will be weighed by the jurors substantially out of proportion to its logically damaging effect, or when it would be inequitable to allow the prosecution to utilize the evidence. *Murphy*, 282 Mich App at 583. Here, there is no indication that the other-acts evidence injected considerations extraneous to the merits of the case, or that the jury gave it undue or preemptive weight. The testimony by the victim of the armed robbery "was tailored to its proper purpose, and did not delve into unnecessary detail or unduly invite the jury to draw an impermissible character-to-conduct inference from it." *Jackson*, __ Mich at __; slip op at 28. The specter of impermissible character evidence did not overshadow the legitimate probative value of the evidence. *Id.*

Moreover, the trial court provided the jury with a limiting instruction concerning this evidence. A cautionary instruction may limit the potential for undue prejudice, *Murphy*, 282 Mich App at 583, and jurors are presumed to follow instructions from the trial court, *People v Waclawski*, 286 Mich App 634, 674; 780 NW2d 321 (2009). In sum, the trial court did not abuse its discretion or otherwise err by admitting the other-acts evidence.

Next, defendant argues that the prosecutor committed misconduct by misleading the jury multiple times during closing arguments.[2] Because defendant failed to preserve these issues on appeal through a contemporaneous objection and request for a curative instruction at trial, *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), our review is limited to plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764.

---

[2] Defendant also argues that the prosecutor committed "other misconduct" by making a "calculated effort" for the jury to hear that a witness had been "pistol whipped," by "flout[ing] the court rules" and leading witnesses on direct examination, and by "general game playing and sandbagging the defense with surprise evidence." Defendant merely makes the conclusory statement that these actions constituted misconduct and does not support his argument with any analysis and supporting authority. Thus, these arguments are abandoned and we need not consider them on appeal. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

Defendant specifically challenges three remarks made by the prosecutor in his closing argument. Prosecutors are given great latitude regarding their arguments and conduct, *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995), and are free to argue the evidence and any reasonable inferences arising therefrom in presenting their theory of the case, *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003). We find that the challenged remarks in this case do not constitute misconduct entitling defendant to a new trial.

First, defendant argues that the prosecutor's argument misled the jury into believing that defendant's conversation with a prosecution witness, in which defendant stated that he "took care of some bitch," must have happened before November 8, 1993, when defendant committed the armed robbery discussed above. Defendant's position is that the witness was alluding to the victim of the armed robbery and not the murder victim. We find that the prosecutor's argument was supported by the evidence. The witness testified that he was positive his conversation with defendant occurred in October 1993. He further testified that he was made aware of the fact that defendant committed an armed robbery, but he did not speak with defendant about that offense.

Next, defendant argues that the prosecutor misled the jury when referencing some of the testimony by defendant's former girlfriend. She testified that defendant came home one night in 1993 and was sweating as if he had been running. Defendant told her to claim that he had been with her all night if the police showed up inquiring about his whereabouts. On cross-examination, the girlfriend admitted that the police showed up, but they did not inquire about defendant's involvement in a homicide. The prosecutor referenced the girlfriend's testimony in his closing argument in such a manner that made it seem as if defendant had instructed his girlfriend to provide the police a false alibi on the night that the victim was killed. To the extent that the prosecutor's argument was misleading, the jury was instructed by the trial court that the lawyers' arguments were not evidence. Further, any potential prejudice resulting from this statement could have been alleviated by a timely objection and a curative instruction from the trial court. See *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Lastly, defendant argues that the prosecutor misled the jury by arguing that the victim's body had been removed from the crime scene by the time defendant and his girlfriend went there. The issue regarding whether defendant, as a bystander, had the opportunity to see the deceased victim as the police were processing the crime scene was relevant to defendant's level of knowledge of crime scene details communicated in his letters to the prosecuting attorney. Defendant's girlfriend testified that she and defendant went to the crime scene when the police were towing the victim's vehicle away. She did not recall whether they could see the victim's body. Other testimony established that the victim's body was removed from the scene *before* the vehicle was transported, thereby undermining defendant's suggestion that he had obtained crime scene information from observations of the scene after the murder and not on the basis of being the perpetrator of the murder. Because the prosecutor is free to argue reasonable inferences arising from the evidence, we conclude that the challenged argument was proper.

Defendant next argues that defense counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct and for failing to offer into evidence a police report with defendant's arrest date regarding the November 1993 armed robbery. Because this issue is unpreserved, our review is limited to mistakes apparent in the lower court record. *People v Fike*, 228 Mich App 178, 181; 577 NW2d 903 (1998). Defendant must establish that counsel's

performance fell below an objective standard of reasonableness and that but for counsel's error, there is a reasonable probability that the outcome of defendant's trial would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

With respect to the challenged remarks that we found to be proper, defense counsel cannot be ineffective for failing to raise a futile objection. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). To the extent that defense counsel should have objected to the prosecutor's argument regarding the girlfriend's testimony as being misleading, defendant fails to establish that defense counsel's failure to object affected the outcome of his trial; there was no prejudice.

With respect to defense counsel's failure to offer into evidence a police report bearing defendant's arrest date on the armed robbery, we find that the decision not to offer it into evidence was sound trial strategy. The police report concerned the other-acts evidence. Defense counsel may have not wanted to highlight the other-acts evidence by admitting the police report because it supplied additional details regarding the armed robbery, assuming that the report was even admissible in the first place. Therefore, we find that defense counsel was not ineffective by failing to offer it into evidence.

Finally, defendant argues that the trial court abused its discretion by admitting an autopsy photograph of the victim into evidence in violation of MRE 403. We review for an abuse of discretion a trial court's evidentiary decision to admit photographs. *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). Photographic evidence is typically admissible when relevant, MRE 401, and not unduly prejudicial, MRE 403, and can be employed to corroborate a witness's testimony or to prove a defendant's state of mind. *Id.* "Photographs are not excludable simply because a witness can orally testify about the information contained in the photographs[,]" and "[g]ruesomeness alone need not cause exclusion." *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995). "[O]therwise admissible [photographs] . . . are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking . . . crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id.* at 77 (citations and quotation marks omitted).

The crux of defendant's argument is that the photograph was not relevant to any material fact that was in dispute, given that the focus of the trial solely concerned the identity of the perpetrator and not the brutality of the murder, the manner of death, or the killer's state of mind. Defendant's argument here was directly rejected by this Court in *People v Mesik (On Reconsideration)*, 285 Mich App 535, 544; 775 NW2d 857 (2009), wherein the panel ruled:

> Defendant argues that the photographs were not necessary because the manner of death was not disputed at trial and instead the main dispute involved the number and identity of the murderers. However, the prosecution is required to prove each element of a charged offense regardless of whether the defendant specifically disputes or offers to stipulate any of the elements. Therefore, while defendant did not contest [the] . . . cause of death, the prosecution was not relieved of its duty to prove all the elements of first-degree murder, including intent. The photographs were helpful to meet this burden. [Citation omitted.]

The autopsy photograph was relevant to proving the victim's identity and death and defendant's intent to kill, and it showed what the victim was wearing at the time she was murdered, which tied into some of the information conveyed by defendant to the prosecuting attorney with whom defendant had corresponded. The autopsy photograph appeared to be an accurate portrayal of the victim and was not "enhanced or altered." *Mills*, 450 Mich at 77-78. Given the testimony the jury heard about the circumstances surrounding the victim's killing and the victim's injuries, we hold that the photograph was "neither shocking nor inherently prejudicial." See *People v Aldrich*, 246 Mich App 101, 115-116; 631 NW2d 67 (2001). Therefore, its probative value was not substantially outweighed by the danger of unfair prejudice, and the trial court did not abuse its discretion by admitting it into evidence.

Affirmed.

/s/ Mark T. Boonstra
/s/ William B. Murphy
/s/ Jane E. Markey